Thank you, Your Honors. May it please the Court, I'm Assistant U.S. Attorney Christopher Jew, representing FBI Special Agent Wynar. I'd like to reserve four minutes for rebuttal, please. This case is about providing officers who are performing a summers-type detention the ability to prohibit cell phone use for a reasonable time period in order to advance legitimate law enforcement interests. There are two issues. First, under the first prong, there is no violation of the Fourth Amendment. Agent Wynar did not violate Lupita Chavez's Fourth Amendment rights by prohibiting cell phone use for the last 40 minutes of her detention. Unlike the Gandwich case, which involved an hour 45 to four hours 45, this involved only a 40-minute period. Mr. Jew, can I interrupt you for a second? Why is it only the last 40 minutes that we're to look at as opposed to the entire length of the detention? As I understand it, the agents came in sometime between 9 and 9.30, and there was an initial period where people were corralled into a main office space. I think one person testified for 30 to 40 minutes. Your Honor. And then there was a lobby for a subsequent 40-minute period. Yes, Your Honor. So why aren't we looking at, you know, if we're construing things in plaintiff's favor, as we must, why aren't we looking at the entire period of detention of not being able to use the phone? It's because the cell phone issue didn't become a live issue until someone actually mentioned it. It's really hypothetical to say that the plaintiffs, any of the occupants, wanted to use their cell phones before anybody actually raised the issue. But, I mean, hypothetical. So agents come in, guns drawn. Two of the volunteers are handcuffed and put against the wall. I think the plaintiff here was in a period, in a state of undress or half-dress, right? She was coming out of the shower. She was not allowed to Why is it hypothetical that these people did not feel or were incapable of using a cell phone for that initial 40-minute stretch? Your Honor, nobody asked to use a cell phone. I agree that, hypothetically, if someone had asked, it's very possible that the agent would have said, no cell phones permitted. We are clearing the offices. It is a very dangerous time right now. But, I mean, isn't that what actually occurred with Agent Weiner, where he said, no one's to use their cell phones in the lobby? So, which gives me the sense that it seems reasonable for me to conclude that no one would feel comfortable using a cell phone during that entire period of time, that it doesn't have to be a hypothetical issue, but something that a jury could find if we found that there was a tribal issue here. Your Honor, the Fourth Amendment is about objective reasonableness. It's about conduct. Here you're basically trying to impute the idea that there would have been a denial of conduct. You're actually suggesting that the agents should be penalized for not raising the cell phone issue when they were, in fact, engaged in other activities. I just don't see that the timing works in the correct manner, the way that the Fourth Amendment is supposed to regulate conduct. So in your view, the only period of time, the 40-minute period of time, is after the agent told them they couldn't use their cell phones. Yes, Your Honor. But why is that consistent? I'm circling back to an earlier point. Why is that consistent with plaintiff's view of the evidence in the record that we have to consider, right? We're not here sitting here trying to resolve any disputed questions. We have to construe this in the manner that plaintiff would put forward and a reasonable jury might find. And couldn't a jury find that none of the people there had the liberty to actually pull out their cell phones? And ultimately, this might not even matter so much. If your argument is instead, okay, fine, we couldn't use the cell phones for an hour and a half, and it's still not a constitutional violation, does it really hinge on whether this is 40 minutes or an hour and a half? Your Honor, it does not really hinge on the specific time period. We believe we prevail in both. For the first prong, and as well as the second prong. So for the first prong, objective reasonableness, we'll just delve into that. We'll get to the second prong in a little bit. There were legitimate law enforcement interests at stake at the beginning of the search when the cell phone issue was not even live. That's really when the situation was most dangerous. You're trying to collect the detainees who were occupants, most who were not expected to be there. They were essentially strangers and whose conduct was really unpredictable. And so during that first period that Your Honor has raised, it's a very unstable, unsafe period. So it's certainly important for law enforcement to get control of the situation. In the second stage, it is important for the agents to maintain control of the situation. It's certainly feasible and entirely possible that there could have been communications to the outside world, to criminal actors who could inflict harm on the agents. Certainly there could be the destruction of evidence. For example, somebody could text, you're in the front lobby, there's a thumb drive we need to take care of. There's a paper document we need to take care of. That was very, very possible. And so those are legitimate law enforcement interests that are advanced by prohibiting cell phone use. Now let's talk about Lupita Chavez's privacy interests. The cell phone issue did not come up because she wanted to talk on the phone. It came up because she was retrieving her identification. She did not have a child care emergency. She didn't have a medical emergency. She didn't want to use the phone at all for communications purposes. And Agent Weiner testified that he would have taken into account circumstances like medical, like child care. He said it didn't even have to rise to that level. But he believed that the most reasonable accommodation would be to release her with the phone. Again, the touchstone here is objective reasonableness. Agent Weiner's conduct certainly fits within that realm of reasonableness. Let me ask this. There's a claim that's been raised that the search itself was pretextual. That it was, that the purpose of the search wasn't so much to search for office records, but really to induce Rachel Chavez, is it Raquel, to interrogate her. Why wouldn't that be inconsistent with GANWICH, for example, where we considered there that if the purpose of the search exceeds beyond the scope of the purpose of the detention, to execute a search warrant and search the story into other areas, that that can be unreasonable under the Fourth Amendment? Your Honor, you're getting into motives and thoughts. It's really speculative. That's one reason. Another reason is especially Well, the Agent Weiner said in the deposition transcript that there was, if I, I don't know if you're trying to find this, but essentially that this was a light, a tactical ruse to arrange the search warrant. That's not heavy-handed. That's actually pretty light-handed. Your Honor, that, that reference is very ambiguous. It really doesn't have anything to do with the interrogation or the alleged interrogation of Raquel Chavez. It has to do with another agency's conduct, which is attenuated from what happened to Lupita Chavez with her cell And that's another reason why we believe that the Fourth Amendment really should apply to conduct, not motives. But attenuation gets into whether we're going to weigh the evidence, which is, again, what we're not doing here. If plaintiff's claim is that the agents came in there in order to detain them and induce or coerce some sort of interrogation, and you have deposition transcripts that might suggest that that could be the case or it might not be the case, but at least crediting that, aren't we now getting into a different basis for the search and whether it exceeded the bounds of what a Summers-type detention allows? Your Honor, the Summers detention categorically authorizes the agents to detain the, the occupants throughout the duration of the search. That's very clear under Dawson, Mueller, and so on. We're really getting into speculation and we're getting into motivation, and we think we're going far afield where the Fourth Amendment is supposed to go. I think you understand that, if I can finish the first prong quickly, Ms. Chavez, Lupita Chavez, she wasn't trying to call anyone, no child care, no medical emergency, no concrete need to actually use the phone. So, it tips the scales firmly in the law enforcement's favor. Let's talk about the second prong. The District Court relied heavily on the Ganwich case, and I see that some of your, your questions have to do with Ganwich. But Ganwich really provides a general proposition of law regarding cell phone use, regarding interrogation. It does not provide clear notice to a reasonable officer that Agent Weiner's particular conduct is unconstitutional. It is just not concrete enough. Plaintiffs have argued in their brief that, that essentially there is a knowing violation of law. But there's a wide range of questioning that's permissible under the Fourth Amendment. In the Mueller case, there was some questioning. In Dawson, there's questioning as well. And so, also, part of Dawson is that you can try to get the voluntary cooperation of the detainee. And so — But in Mueller, you can get, you can have that questioning so long as it doesn't prolong the detention itself. But the claim here seems to be that the purpose, or one of the purposes of prolonging the detention of, of the plaintiff here was to help induce the interrogation of, of Raquel, of, of the office manager. Your Honor, even under plaintiff's version of the facts, we don't see any unreasonable extension of Lupita Chavez's detention period. Agent Weiner was courteous and professional. He was addressing the concerns like, is there a warrant? You had the handcuffs removed. He was checking identification. He was engaging in reasonable law enforcement business during that last phase of the detention. There's nothing objectively unreasonable about his conduct with regards to Lupita Chavez. It's clear that Lupita Chavez cannot assert a vicarious claim for Raquel Chavez. Raquel Chavez has her own claim. And so we'll see how things go there. But the Court should keep in mind what is the focus of the conduct as to Lupita Chavez. I'm almost out of time. So we see, first of all, the law enforcement interests outweigh the privacy interests here. And second, there's certainly no violation of clearly established law. The contours here are very vague. Thank you, Your Honor. One, one more question. If you could go back to the law enforcement interests once the detainees had been moved to that front room. Yes, Your Honor. I guess at that point, it seems a lot, a lot more questionable to me that there were legitimate law enforcement interests that were at stake. Because at that point, I don't know, there were, what, 20 agents that swarmed in there? I mean, there were not that many people that they found in there. They had the premises under control. They were proceeding, I assume, with the search. They determined that it was safe to put these people over here and they weren't getting in the way. So what is the danger that was posed by if one of them had called someone on the outside? Your Honor, if you had called somebody outside, they could still inflict harm to people on the inside. When you're inside, you have superior intelligence than when you're released with your phone. You can say, I see three agents in the main room. They're carrying X types of weapons. In addition, from the outside, they could tell one of the detainees, oh, there's a thumb drive right there. You'd better get it. We've got to get this away from the cops. Also we ought to think about the policy implications of what's going on. Smart phones are incredibly powerful devices. They really do enable all sorts of disruption to the search. And this conduct itself will be very helpful. The Gandwich case was issued almost 20 years ago. It was before a lot of the technological issues would arise now. So Mr. Duke, all that may be true, but if Lupita were released 40 minutes later, how – right? If people were moved into the lobby area and then the agent says, no one can use their cell phones, and then 40 minutes later, she's released and she's allowed to use her cell phone, how compelling was the interest to cut off cell phone contact for this possible communications about a thumb drive and this – you know, just if something were – if she were going to be given access to communicate 40 minutes later? Your Honor, when you're released with your phone and you're outside, you cannot provide the same type of intelligence. In addition, you cannot actually mess up the search yourself because when you have the cell phone, it's much easier to disrupt the search. So the concern was during that stretch of time or during that stretch of even including the office, the main office, a phone call might somehow impede the execution of the search within that office itself? Absolutely, Your Honor. Okay. Thank you, Your Honor. Okay. Thank you very much. Let's hear from counsel for the plaintiffs. Good afternoon, Your Honor. Michael Dohler on behalf of Lupita Chavez. By the way, thank you, Your Honors, for readjusting the hearing because of the family medical matter to allow me to do it remotely. So I greatly appreciate that. I'm not going to belabor this. I don't think I need a lot of time because the brief that we filed addressed all the points. The justices seemed to grasp the factual understanding. And the thing that we're not unaware of, Your Honors, is that the recent years, the courts have narrowed the scope of Bivens to understand the restrictions where agents would know something is wrong and that's where we are today. So the restriction on Bivens over the years, this is one of those cases that clearly was restricted. The officer knew what he could and could not do. And there was no justifiable reason for how he acted. The facts are laid out pretty clearly. And again, taking Apelli's arguments as most favorable light and not weighing the evidence, but I think what the justices have raised should be subject to a jury and subject to the fact finder. But clearly, they admitted that within 15 minutes, the premises were secured after 23 officers came in with, most of them, guns drawn. Shortly after they came in with guns drawn, they were corralled into the large room and two of them were handcuffed and pushed against the wall. But within 15 minutes, they knew that there were no documents on page 1. And that's why I said we were surprised. And we were surprised because there was nothing there. Now in that context, you have to understand he met a couple of days with a state investigator, Cox, and came up with a ruse to come in to see the offices and try to get Raquel Chavez to cooperate. So he talks about a tactical ruse to get a subpoena to issue it. He basically was going in there to intimidate and harass. And by the way, other than Raquel Chavez, most of them did not speak English well and needed an interpreter. Rito Chavez in particular, Lupita Chavez did not speak English well. And the fact that they were all told not to use their cell phones because she said, or they contended she didn't ask. I mean, we're not here in trial. And if they want to cross-examine a witness, why didn't you ask? It's much more available to get the full picture of the testimony. Let me ask, you know, opposing counsel raised the point that at least in our other case, the use of the cell phones or the being cut off from the cell phone use was important because there were children in the office. There wasn't a way to have the children be picked up and they detained for one to four hours potentially. You know, I would agree there's no strict rule about incommunicado with cell phones. What makes the being cut off from cell phone use unreasonable in this circumstance? Well, again, the search was completed in 15 minutes. They held her. It was the totality of the last 40 minutes, but it was more than 40 minutes. But as soon as access to her phone, she immediately called and spoke to an attorney. And frankly, Mr. Weiner was contacted by that attorney and it stopped the rest of the questioning of Ms. Chavez. It may not be to call to pick up the kid, but to really have a right to counsel if something is going... Can I interrupt you for just a second though? Please. Yes, Your Honor. Counsel, did you tell Agent Weiner or anyone else, hey, I need to use a cell phone so that I can call my lawyer? No, she did not. Okay. All right. So I have a question for you. So the Summers case, the Supreme Court case, said that they were laying out a categorical rule, right? And they did not want the rule to be decided on an ad hoc basis. Now there is the Ninth Circuit that sort of deviates from what Summers said, but that was because they found extraordinary circumstances. That is, number one, that they were doing the detention expressly for purposes of obtaining a confession or statements. And secondly, because it was objectively unreasonable to keep her from using the phone for her to obtain childcare. But none of that is to be found in this case. Don't you agree, Mr. Stoller? I do agree that there was no issue with childcare in this case, but that doesn't mean it was exclusive to just having to use the phone for childcare. So in other words, there's many reasons why somebody would want to have a right to use a cell phone, Your Honor, and basically did be... But is there a case, is there a case that you can cite me to that says it's simply depriving someone of the use of a cell phone while they're being detained, while a search is being conducted after a judge has found probable cause, that that is an unreasonable search under the Fourth Amendment and that an officer should know that to be the case? Well, I think the Ganderwitch case, which was decided after Beebe, which first Beebe said before that, Your Honor, was that affirmed that the right not to be held incommunicado by deprivation of a telephone was not clearly established until 2003 in Ganderwitch. So Ganderwitch established that. So if I understand you correctly, the Supreme Court has said that you must allow people who are being detained during a search to talk to other people and to use their cell phones. I don't think there's an exact basis that when the detainees may have the right to use the cell phone, even Agent Weiner said it was an art and he can decide to have the discretion to do it. But if it's left up to the discretion of the agent to decide whether it's because of a childcare or some other medical emergency, that is not the exclusive fashion because the agent said he has the discretion and the art to do it. But if the agent is doing it for improper purpose to intimidate into exact interrogation, and that wasn't the case as to Lupita, though, was it? It was a blanket rule for nobody to use the phone. And when he took out her phone, he told her, I told you not to use your phone. And she says I was looking it up for ID. So the very fact that he touched her phone already got him alarmed that somehow he was she was going to be doing it. But again, unfortunately, your honors with limited testimony and depositions, you don't get the full picture until you put it in front of a fact finder and have all of the examination take place. But as far as I can tell, she never made a statement or any kind of incriminating statement, right? That's correct. Other than wanting to get dressed when she was half dressed. I, you know, I found that to be somewhat disturbing. But, you know, we don't know what the state of undress was. Exactly. I mean, at least I don't and I'm not sure that I want to know. I look at the Mueller case. They were they were standing there naked. And that was okay. Right. But your honor, all of these other cases have to do with more violence and more concern for legitimate law enforcement protection and things like that. None of that was here. You have to look at the totality of everything that took place. This was an office building that was completed in 15 minutes. They knew about the layout before. These were not threatening people. And the fabricated speculation of a council for the government to say these are law enforcement interests when Mr. Weiner acknowledged that they were surprised that there was no documents and there was nothing there. And by the way, even after they let Miss Chavez leave, they there until one o'clock. The continuation of whatever they were doing was not impeded. There were no people that showed up afterwards. And that in and of itself is the fact that there was no reason to deprive her of her rights to be able to have access when when the search was over within 15 minutes. Well, I guess my my question for you relates not so much to whether there was a Fourth Amendment violation per se, but rather the second prong of the qualified immunity inquiry. That seems to me the biggest hurdle for your position, right, is that you have to point us to a case that puts basically the unlawfulness of Weiner's conduct beyond debate. Every reasonable officer in his shoes would have known that what he had ordered was against the law. And the best you point us to in terms of being on point factually is this Ganwich case. And I think, as maybe has already been mentioned, the facts there are somewhat removed from the facts before us in a number of ways. And so I guess I'm having trouble seeing how we would rule in your favor here if that if that's the most on point authority we have that supposedly told Officer Agent Weiner that his conduct was unlawful. Well, you have both Ganwich and you have Dawson. And before that, you have Bibi, which also talks about the conduct. In other words, Bibi was even before then it was clear to law enforcement that they can't detain them. So the fact that law enforcement has knowledge about what they can or can't do during a summons type of search or and what they can do has been there. It's distinguished a little bit as the cases have been decided. And again, it's not just I guess counsel was trying to tie the length of the search or the length of the deprivation and being detained also with an interrogation. And that's not the case either. So the well, let me put it in these terms. It is clear from I'm sorry if I don't know if it's Officer Agent Weiner, but but from his standpoint, it is clear that he can detain Miss Chavez for the entire length of the search. It went on until what you said, one o'clock. She was allowed to leave what around eleven o'clock. So he could have. Go ahead. No, no. Correct. I acknowledge. Okay. So he I mean, he knows that as a as a matter of Fourth Amendment law, I could if I needed to or wanted to have her remain here. And so you're not complaining about the length of the detention. You're saying that the circumstances, the manner in which the detention was carried out was unreasonable. And so we have to look to, okay, well, what's the body of law that put an officer in Agent Weiner's shoes on notice that for that 40 minute stretch, telling someone they're not able to use the phone is unlawful. And that's why I say I turn to Kenwich. It is at least dealing with the same kind of issue. But the facts there are leagues away from our facts in terms of saying, you know, here's where the constitutional line is. And so everybody would know that if you're past this line, it's unlawful. I understand that, but we can't deal with it in an abstraction, even though a lot of times we're trying to do that. So we haven't. But when Agent Weiner says this, this was a tactical ruse to obtain a search warrant, and he wanted to go into the question, the question, Raquel Chavez, and basically was doing certain things to intimidate and cause these people to be someone apprehensive and to be put in the front room away from the search that had already been completed. And her not having the ability, Raquel Chavez not having the ability to use her cell phone, or even be told that she could do. There was even testimony, I think your Honor said, well, are we are we under arrest? And how come they're still handcuffed? Because they weren't taking the handcuffs off of the other two individuals until Ms. Chavez mentioned something about that. So again, at what point is somebody finally allowed to speak up and say something when they've been certainly given the impression that they can't do anything, and they have to sit there, and they can't use their cell phone? So again, the reasonableness of it has to be looked at. And it can't be looked at it as there is legitimate law enforcement interests, there's no doubt. But you have to think about... Well, Mr. Stoller, I guess one point of comparison again, that I could find is that at least with the cell phone period of time being cut off, if I remember correctly in that case, the court did find that an hour and a half of not being able to use a cell phone in that context was unreasonable. Now, as we were mentioning before, it did also involve dealing with child care and having the children picked up as opposed to another basis. But if we do look at the totality of the detention of the seizure here, it's not just the 40 minutes in the lobby period, but it's the entire length. And I, at least, if you're construed the facts in favor of the plaintiff, think that we should look at the entire period. And a person doesn't need to ask to use their cell phone, in my view, to feel that they're just not at liberty to do it under the circumstances that arose. So can you at least speak to, is there enough of an analog in that context with GAMWICC to provide that clearly established rule for the agents here? Well, yes, I think GAMWICC does do that because it establishes the right, and it needs not to be held in communicado and deprived telephone use. And again, how long it is, we talked about that earlier. I don't think the length has to do, it has to do with the circumstances that you have to look to. And then if it's going to be a long drawn out thing, we get it. But then the other thing is that it's Ivey who raised the two points that basically Mr. Weiner has been arguing, which does establish this right. And then in addition to it, the deprivation of the use of the telephone is not just for the purpose of coercing interrogation. I think there's not a lot of case law in it. And it might be more and more as cell phones and things like that become, you know, as we're talking about it. But clearly, we're talking about a violation of Constitution right now. The district court did find that Raquel Chavez clearly is going to trial. And although maybe Lupita had less infringement than Raquel because Raquel stayed and didn't leave, it doesn't mean that Lupita's rights were not violated as well. And therefore, they should not have been based upon what was taking place with the search in this office at this time. And they haven't tied it to any legitimate concerns that law enforcement had for their fear or safety or obstruction of evidence or anything else. And again, these are not the other case that were cited by counsel in the reply brief, which again, we're all in opposite because they have to do with mental health and violent criminals and like that. And again, that wasn't the case here. So in the actual situation, it needs to be looked at, your honors. I see I'm out of my time, and I appreciate your attention. Okay, thank you very much. You have some time for rebuttal, I think. Yes. Mr. Stoller, I hope your medical emergency situation worked out. We hope so, your honor. Thank you. We have the procedure. We're waiting for the results. Great. I hope it works out for you, sir. Thank you very much. Your honors, thank you. I'll make it brief. Under the first prong, as Judge Benitez has noticed, there's no emergency. There's no actual attempt or need for Lupita Chavez to use the phone. It certainly reduces her privacy interest. The Fourth Amendment does not require unfettered access to a phone. And some of the discussion sort of hints that perhaps there is. And I don't think that the Fourth Amendment requires that. The second prong, the contours of Ganowich are certainly not clear enough to provide a reasonable officer clear notice that Agent Wiener's conduct would be unconstitutional. We understand that there's concern about Raquel Chavez's claim. Let her assert her own claim. She's got her own lawsuit. It's part of the suit, of course. Lupita Chavez, her cell phone claim is really unrelated to what happened with Raquel Chavez. And Ganowich does not establish clearly established law that would provide fair notice to an agent that somehow an indirect interrogation means that you can't let somebody — you have to let somebody use the cell phone when they're not even asked for it. Well, Mr. Yu, how about this connection? As Mr. Stoller pointed out, when Lupita Chavez was allowed to use her cell phone, she called up counsel, a lawyer. May I correct? Raquel Chavez. Oh, I'm sorry. Thank you. Sorry. But essentially, the phone use was the means by which the interrogation of Raquel ultimately ended, right? A phone was handed over to her. Someone said, you don't need to speak to the agents. And she invoked her right to an attorney. So if you construe this claim as one where the basis for the search was to try to ultimately get the office manager to be interrogated, couldn't the connection between not allowing Lupita or anyone else to use a cell phone be a means to effectuate that purpose? Your Honor, I think that the connection between the cell phone use and Raquel Chavez is far tenued. In fact, it weighs in favor of the government in the sense that Agent Weiner released three of the occupants with their phones. So they were at liberty to help Raquel Chavez at that point. And they did. And Rito Chavez brought a cell phone back in to Raquel Chavez, and that allowed her to use it. She spoke with the principal of the Lifesavers organization. She spoke with her counsel. We all understand that Summers, Mueller, Dawson, they provide the categorical authority for the agents to detain Raquel Chavez throughout the length of the search. She's the office manager. It's reasonable to ask her a question to try to get her cooperation and her assistance. I understand that plaintiffs are saying she already handed over the keys, but she can help with things like computers. There are four computers that were seized. There are thumb drives as well. It's objectively reasonable to try to get her assistance. Appellee has argued that there's a knowing violation of the law, but there's really a range of questioning that is perfectly permissible under the Fourth Amendment. And so to get to a knowing violation of law, it really requires quite a stretch. We understand that we're looking at plaintiff's version of the material facts, but we're really getting into a territory where only an unreasonable jury would stretch and to agent Weiner. We should really stay focused on the cell phone claim and wouldn't really think about what the clearly established test requires in terms of fair notice. We are light years away from providing clear notice to a reasonable officer. Certainly, we understand the court's concerns about the detention of Raquel Chavez. She has her own claim. Okay. Counsel, can I ask you a question? Yes, sir. Are you aware of any Supreme Court cases that have granted the Gandwich case with approval? I'm unaware of that, no. Your Honor, we respectfully request that the court harmonize the Gandwich decision with Mueller, Dawson, and also acknowledge the technological realities of the world we're living in. We understand that people do have privacy interests. Thank you, counsel. Let me just ask Judge Benitez, do you have any other questions for government counsel? No, no, I'm sorry. No. Okay, very good. Thank you, Your Honor. The case just argued is submitted and we are adjourned for this session.
judges: WATFORD, SANCHEZ, Benitez